IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AARON D. C., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 20-cv-00177-SH |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Aaron D. C. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Commissioner's decision is AFFIRMED.

**I.    Disability Determination and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education,

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id*. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his or her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps, assuming the impairment is not conclusively presumed to be disabling. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to

determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II. Background and Procedural History

Plaintiff applied for disability insurance benefits on December 3, 2018, with a protective filing date of November 30, 2018. (R. 15, 178-79.) Plaintiff alleges that he has been unable to work since April 6, 2018, due to posttraumatic stress disorder ("PTSD"), traumatic brain injury ("TBI"), insomnia disorder, and depressive disorder with anxious distress. (R. 178, 214.) Plaintiff was 42 years old on the date of the ALJ's decision. (R. 34, 178.) He has a high school education, some college, two associate degrees, and past work as a flight instructor and in a military role equivalent to a unit leader. (R. 50, 66-67, 215, 301, 315.)

Plaintiff's claim for benefits was denied initially and on reconsideration. (R. 77-105.) ALJ David W. Engel conducted an administrative hearing and issued a decision on November 7, 2019, finding Plaintiff not disabled. (R. 15-34, 40-76.) The Appeals Council denied review on February 27, 2020 (R. 1-6), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff filed this appeal on April 28, 2020, within 65 days of that denial. (ECF No. 2; *see also* R. 2.)

## III. The ALJ's Decision

In his decision, the ALJ found at step one that Plaintiff had engaged in substantial gainful activity from April 2018 to September 2018, but there had been a continuous 12-month period during which he had not. (R. 20-21.) The ALJ then proceeded to the remaining steps for the periods when Plaintiff did not have such activity. (R. 21.) At step two, the ALJ found Plaintiff had the severe impairments of "status" post traumatic brain injury, post pelvic fracture, and post bladder rupture, as well as PTSD. (*Id.*) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 22-24.)

The ALJ then determined Plaintiff had the RFC to perform light and sedentary work but was unable to climb ropes, ladders, or scaffolds. (R. 24.) As to environmental limitations, the ALJ found Plaintiff must avoid exposure to unprotected heights and dangerous moving machinery parts. (*Id*.) As to psychologically based limitations, the ALJ found Plaintiff could understand, remember, and carry out simple instructions in a work-related setting and could interact with coworkers and supervisors under routine supervision. (*Id*.) However, the ALJ found Plaintiff could not interact with the general public more than occasionally, regardless of whether that interaction was in person or over a telephone. (*Id*.) The ALJ further found Plaintiff would always notice symptoms that included intermittent pain and fatigue, depression, anxiety, and allied mental impairments, but he could nonetheless remain attentive and responsive and perform work assignments within the RFC's limitations. (*Id*.) The ALJ provided a lengthy analysis of the evidence that went into this finding. (R. 24-32.)

At step four, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could not return to his past relevant work. (R. 32.) However, the ALJ found at step five Plaintiff could perform other occupations existing in significant numbers in the national economy, including housekeeping cleaner, merchandise marker, touch-up screener, and clerical mailer. (R. 32-34.) The ALJ thus found Plaintiff was not disabled. (R. 34.)

## IV. Issues

Plaintiff asserts on appeal that the ALJ erred by substituting his opinion for that of two medical sources—examining physicians Dr. Dennis Rawlings and Dr. Joseph James. Although Plaintiff offered no applicable law in his opening brief and very little in his reply, the Court interprets Plaintiff's argument as faulting the ALJ's analysis of the medical evidence in (1) assigning "little probative value" to the assessment of Dr. Rawlings (R. 30 (citing R. 478)) and

(2) finding Dr. James' opinion "not . . . overly persuasive" (R. 29 (citing R. 300-07)). (*See* ECF No. 15 at 6-8.) The Court finds no error in the ALJ's analysis of either medical source.

**V.      Relevant Medical Records**

Before analyzing Plaintiff's claimed errors, the Court notes the following evidence in the medical records before the ALJ:  Prior to his retirement from the military, Plaintiff was referred through the compensation and pension process to Dr. Timothy Doenges for a mental disorders examination. (R. 475.) On May 19, 2016, Dr. Doenges conducted that exam. (R. 468-77.) Physically, Dr. Doenges noted that Plaintiff had suffered a moderate to severe TBI during a plane crash in 2004, which was evaluated in 2006 and resulted in certain symptoms. (R. 468, 472, 476-77.) However, Dr. Doenges noted that Plaintiff had had a successful military career in the 12 years following the TBI, being promoted and successfully completing a career with Special Forces. (R. 476.) Dr. Doenges did not order additional testing relating to the TBI, finding the records available a thorough and accurate account of his cognitive symptoms and current functioning, and his report listed the psychological and cognitive facets of the TBI. (*Id*. at 476-77.)   Separately, Dr. Doenges diagnosed Plaintiff with (1) insomnia disorder and (2) adjustment disorder with mixed anxiety and depressed mood. (R. 468.) On mental status examination, Dr. Doenges indicated Plaintiff had an intermittently tearful affect, linear and somewhat concrete thought process, no evidence of psychosis, normal intelligence, and unimpaired or "possibly mildly impaired" insight and judgment. (R. 474.) He further indicated Plaintiff's memory was intact except for the time period surrounding the 2004 plane crash. (*Id*.) With regard to the mental diagnoses, Dr. Doenges found that Plaintiff had occupational and social impairment "due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress" or "symptoms controlled by medication." (R. 469-70.) As for the results of the TBI, Dr. Doenges opined that Plaintiff had mild functional impairment resulting from a mild

5

impairment of memory, attention, concentration, or executive functions; normal judgment; occasionally inappropriate social interaction (in the form of social isolation and occasional mood lability and irritability/anger); and anger and irritability that frequently interfered with, but did not preclude, workplace and/or social interaction. (R. 477.)

Two years later, Dr. Rawlings evaluated Plaintiff in connection with his application for VA disability benefits. (R. 311-37.) He observed that Plaintiff presented as an extremely tense, hyper aroused, angry person; had greatly reduced emotional tone and speech rhythm; and displayed "good" attention and concentration, intact memory, abstract thinking, and logical and goal-directed thought processes. (R. 321.) He diagnosed Plaintiff with PTSD and major depressive disorder with anxious distress. (R. 311.) Dr. Rawlings completed two forms[2] titled "Individual Unemployability Statement," wherein he opined that Plaintiff has difficulty attending to or is easily distracted from the task at hand; has intrusive thoughts which interfere with his ability to stay focused on the task at hand; has significant difficulty accepting supervision or receiving instructions without becoming angry (authority conflict); has significant difficulty functioning around other people, difficulty functioning as a team member, and feels uncomfortable around others; is usually fatigued at work due to disrupted sleep, making concentration and focus on work assignments difficult; and has extreme symptoms of irritability and is ready to fight at the slightest provocation. (R. 337, 478.)

Dr. James performed a consultative mental status examination of Plaintiff on January 15, 2019. (R. 300.) He observed Plaintiff was fully oriented and alert; displayed no indicators of psychopathology; had a sullen, tense, and tearful affect, despite reporting that he did not feel depressed; and displayed logical, sequential, and goal-driven thought processes, intact memory,

---

[2] While the forms are signed on two different dates—May 11, 2018, and July 10, 2018—they appear to be identical and are both based on the same examination date of May 10, 2018. (*Compare* R. 337 *with* R. 478.)

6

sufficient attention and concentration, and average intelligence. (R. 302.) Dr. James administered the Montreal Cognitive Assessment (or, "MoCa"), the results of which suggested Plaintiff's reported difficulties were not severe enough to inhibit his ability to demonstrate basic cognitive functions. (R. 302, 304.) He diagnosed Plaintiff with unspecified depressive disorder and unspecified anxiety disorder. (R. 302.) Dr. James then offered what he identified as his clinical opinions regarding how Plaintiff's impairments would limit Plaintiff's ability to perform work-related mental activities. (R. 303.) Specifically, Dr. James opined Plaintiff had: (1) adequate ability to execute tasks of daily living and to understand work/school-related activities; (2) moderately impaired ability to remember work/school-related information, because his recent/immediate memory appeared defective; (3) intermittently impaired ability to concentrate and persist in work/school-related tasks, because he displayed difficulty following simple instructions; and (4) moderately impaired ability to socially interact and adapt in a work/school-related environment, because he appeared excessively hypervigilant and paranoid and might require close supervision in a work setting due to being often disruptive, angry, and threatening. (R. 303.) At the conclusion of his report, Dr. James indicated the potential existed that Plaintiff might have been underperforming, and as such, his assessment might not be an accurate assessment of Plaintiff's true abilities. (R. 303.)

Beginning in February 2019 and continuing through August 2019, various VA providers treated and/or assessed Plaintiff's mental health impairments. (R. 479-579.) On February 7, 2019, Plaintiff presented to Keryl Jones, a licensed clinical social worker, for an initial mental health evaluation. (R. 578-79.) He reported an inability to get along with people and memory problems. (R. 578.) Ms. Jones noted Plaintiff was alert and oriented ("Ox4") and had a defensive attitude; an irritable, frustrated mood; congruent, tearful affect; verbose speech; logical thought processes; normal thought content; fair insight; and good judgment. (R. 579.)

Plaintiff presented to Dr. Jodi Yelverton on March 12, 2019, for a mood and memory evaluation. (R. 554-56.) He reported mood swings, fatigue, poor short-term memory, and difficulty getting along with others. (R. 555.) Dr. Yelverton's found Plaintiff's recent and remote memory intact and discussed with Plaintiff that he needed to attend "MH" on a regular basis to achieve his goals. (*Id.* at 555-56.)

On March 14, 2019, Stephen Clark, a licensed clinical social worker, conducted a comprehensive psychiatric evaluation of Plaintiff and established an initial treatment plan. (R. 548-52.) Mr. Clark noted Plaintiff's primary concerns were chronic anger and mistrust, with poor memory and emotional lability being key factors. (R. 548.) On mental status examination, Mr. Clark found Plaintiff was fully oriented, had no evidence of psychosis, was emotionally labile, had poor short-term memory, and had good intelligence and abstraction ability. (R. 550-51.) Mr. Clark recommended Plaintiff attend a PTSD therapy group. (R. 551.) Plaintiff followed up with Mr. Clark on July 10, 2019. (R. 524-25.) He reported fleeting suicidal thoughts but no plan or intent and indicated that he had not yet attended group therapy because he was remodeling a home. (R. 524.) Mr. Clark's mental status examination was normal apart from a notation that Plaintiff's mood was anxious. (*Id.*)

Plaintiff presented to Dr. Christopher Helfer on July 25, 2019, for a mental health medication management appointment. (R. 515-18.) Plaintiff reported feeling as though he was "on an emotional rollercoaster" and struggling with irritability, reactivity, and anger. (R. 515.) Dr. Helfer's mental status examination was normal apart from a dysphoric mood with restricted affect, and he prescribed an antidepressant for mood and sleep-enhancing properties. (R. 517.) At a follow-up appointment in August 2019, Plaintiff reported no improvement, and Dr. Helfer prescribed new medications. (R. 507-09.)

## VI. Analysis

Plaintiff contends that the ALJ erred by finding Dr. Rawlings' assessment had little probative value and by finding Dr. James' opinion was not overly persuasive. In discussing the medical source opinion evidence, the ALJ concluded that Dr. Rawlings' assessment had little probative value because: (1) it was "radically inconsistent" with the VA records that showed Plaintiff's clinical presentation over a period of time; (2) it was based entirely on Plaintiff's subjective statements; (3) it contained no clinical testing, analysis, or longitudinal treatment history; (4) it was a standard "check-the-blocks" assessment; and (5) it offered an opinion on an issue reserved to the Commissioner. (R 30.) As for Dr. James' opinion, the ALJ found it was not overly persuasive, because Dr. James indicated Plaintiff "may not have given his best" and because Plaintiff's presentation at a later July 2019 examination was "strikingly different." (R. 29.) As support, the ALJ specifically discussed the normal mental status examination findings from the July 2019 examination with Dr. Clark, including, *inter alia,* Plaintiff's anxious mood but normal affect, normal psychomotor activity, and "good" concentration, abstraction, intelligence, comprehension, memory, insight, and judgment. (*Id.*) Noting Plaintiff's "rather extensive" activities of daily living, the objective evidence showing no more than moderate mental impairments, and his subjective statements regarding crowds and familiar social situations, the ALJ assessed the RFC set forth above. (R. 31.)

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 404.1520c. A "medical opinion" is a statement from a medical source[3] about what a claimant "can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in four categories of abilities, including the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining

---

[3] Acceptable medical sources include licensed psychologists. 20 C.F.R. § 404.1502(a)(2).

concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . ." *Id*. § 404.1513(a)(2)(ii). If the record contains a medical source opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the "persuasiveness" of all medical opinions and prior administrative medical findings by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict an opinion or finding. *Id*. § 404.1520c(a) & (c). Supportability and consistency are the most important factors, and the ALJ should always explain how he considered those factors in the decision. *Id*. § 404.1520c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions or prior administrative medical findings about the same issue that are equally well-supported and consistent with the record, but not identical. *Id*. § 404.1520c(b)(3).

  Plaintiff challenges the ALJ's consistency factor findings, specifically asserting that the VA medical evidence summarized above is consistent with Dr. Rawlings' and Dr. James' opinions, and therefore, the ALJ should not have discounted their opinions. (*See, e.g.,* ECF No. 18 at 3.) As an initial matter, the Court notes Plaintiff points to no functional limitations identified by any other medical source that are inconsistent with the RFC. Aside from Dr. Rawlings, Dr. James, and the state agency psychologists, Dr. Doenges was the only other medical source in the record to indicate functional limitations. Dr. Doenges identified mild cognitive and social functional limitations, specifically stating Plaintiff was not precluded from workplace and/or social interaction despite

frequent interference from his anger and irritability. (R. 477.) The ALJ did not discuss the persuasiveness of Dr. Doenges' opinion in his written decision. But, he did correctly note that there was no evidence showing more than moderate mental impairments; he included skill level and social limitations in the RFC; and he accounted for constantly noticeable but not disabling symptoms in the RFC. (R. 24, 31.) Thus, Dr. Doenges' opinion is consistent with the RFC, and the ALJ's failure to expressly state that he found his opinion persuasive constitutes harmless error. *See, e.g., Mays v. Colvin,* 739 F.3d 569, 578-79 (10th Cir. 2014) (finding a failure to weigh a medical opinion to be harmless error if there is no inconsistency between the opinion and the ALJ's assessment of the RFC).

Additionally, the Court finds no error in the ALJ's evaluation of the remaining VA evidence Plaintiff cites. Plaintiff asserts that the abnormal mental status examination findings as to his mood and/or affect and the symptoms his providers recorded are consistent with the opinions of Dr. Rawlings and Dr. James and warrant additional RFC limitations. The ALJ referenced these treatment notes generally in his evaluation of Dr. Rawlings' opinion and specifically discussed Mr. Clark's July 2019 examination in his evaluation of Dr. James' opinion.[4] (R. 29-30.) Although Ms. Jones, Dr. Yelverton, Mr. Clark, and Dr. Helfer recorded the symptoms Plaintiff described to them, their mental status examinations were unremarkable apart from an abnormal mood and/or affect. (R. 507-10, 515-18, 524-25, 548-53, 578-79.) These findings are consistent not only with the ALJ's specific analysis of Mr. Clark's July 2019 examination, but also his more general analysis. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th

---

[4] The ALJ refers to Mr. Clark's July 10, 2019, notes are relating to a "physical examination." (R. 29 (citing R. 524).) However, as previously noted and is clear from the ALJ's recitation of his findings, Mr. Clark is a licensed clinical social worker who conducted a psychotherapy session with Plaintiff on that date. (R. 524-25.)

11

Cir. 1996). The ALJ did not recount every one of the VA providers' treatment notes, but he clearly considered them.

To the extent Plaintiff argues the symptoms the VA providers recorded support additional limitations, the Court finds the ALJ provided numerous reasons, supported by the record, to discount Plaintiff's symptoms, including his extensive daily activities, his lengthy work history after the plane crash, his ability to obtain two associate degrees and complete almost all the coursework for a bachelor's degree, and his minimal mental health treatment. (R. 27-29.) Furthermore, the ALJ accounted for Plaintiff's subjective report that he is uncomfortable around crowds by including an RFC limitation regarding contact with the general public. (R. 31.) Because the ALJ's consistency findings are supported by the record, the Court accords them deference. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (noting that such determinations are peculiarly the province of the finder of fact and will not be upset where they are supported by, and closely and affirmatively linked to, substantial evidence).

Plaintiff essentially asks the Court to reweigh the evidence, which it cannot do. *See Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007). Instead, this Court reviews "only the *sufficiency* of the evidence, not its weight" and does not displace the Commissioner's choice between two fairly conflicting views, even if the evidence may also have supported contrary findings. *Id*. at 1257-58. Moreover, Plaintiff does not challenge the ALJ's supportability factor findings as to Dr. Rawlings' and Dr. James' opinions. (R. 29-30.) Even if the inconsistencies the ALJ identified were insufficient to reject their opinions, "the ALJ was entitled [reject them] on supportability grounds." *Baca v. Saul,* 2021 WL 1390776, at *7 (D.N.M. April 13, 2021).

In sum, the ALJ's decision indicates that he considered the entire record and evaluated the evidence in accordance with the appropriate standards. Accordingly, there is no reversible error, and ALJ's decision is supported by substantial evidence.

**VII.   Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 12th day of August, 2021.

_____
**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**